O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| EDUARDO VELLANOWETH, | ) | Case No. CV 10-3105-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Eduardo Vellanoweth ("Plaintiff") seeks judicial `review of the Commissioner's final decision denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. For the reasons stated below, the Commissioner's decision is affirmed.

**I.    Factual and Procedural Background**

Plaintiff was born on September 24, 1951. (Administrative Record ("AR") at 16). He has a high school education and relevant work experience as a security guard and musician. (AR at 16).

Plaintiff filed an application for DIB on October 25, 2006, alleging that he has been disabled since July 16, 2006, due to mental problems, nervousness, panic attacks, hepatitis C, memory loss, bipolar disorder, aggression, and mood disorder. (AR at 136). The Social Security Administration denied Plaintiff's application initially and on reconsideration. (AR at 9, 68-72, 76-80).

An administrative hearing was held before Administrative Law Judge Ariel L. Sotolongo ("the ALJ") on August 20, 2008. (AR at 24-65). Plaintiff, who was represented by counsel, testified at the hearing. (AR at 28-52). A vocational expert and Plaintiff's brother also testified at the hearing. (AR at 52-65). The ALJ issued a decision on November 4, 2008, denying Plaintiff's application. (AR at 9-17). The ALJ found that Plaintiff: (1) has not engaged in substantial gainful activity since his alleged onset date of disability, (step 1); (2) suffers from the severe impairments of mood disorder, nos, and substance abuse disorder (step 2); (3) does not have any impairments that meet or equal the criteria of a listed impairment (step 3); (4) has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but is limited to simple repetitive work with no more than occasional exposure to the general public and co-workers; (5) is unable to perform past relevant work as a security guard or musician; but (6) is capable of performing other work that exists in significant numbers in the economy. (AR at 11-12, 14, 16-17). The Appeals Council denied review on February 26, 2010. (AR at 1-4).

Plaintiff commenced this action for judicial review on April 26, 2010. The parties filed a joint statement of disputed issues on November 4, 2010. Plaintiff contends that the ALJ failed to give proper consideration to Plaintiff's credibility, lay witnesses testimony, and

2

the opinions of Plaintiff's treating doctors. Plaintiff seeks remand for payment of benefits or, in the alternative, remand for further administrative proceedings. (Joint Stipulation at 22). The Commissioner requests that the ALJ's decision be affirmed. (Joint Stipulation at 22). The Joint Stipulation has been taken under submission without oral argument.

## II.  **Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. *Lingenfelter*, 504 F.3d at 1035 (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-721.

\\

\\

3

III.  DISCUSSION

  A.  Plaintiff's Credibility

    Plaintiff contends that the ALJ erred by discounting his subjective symptom testimony. (Joint Stipulation at 4-7, 10-11). At the hearing, Plaintiff testified he had to stop working because he was going "nuts." (AR at 31). He reported experiencing daily episodes of uncontrollable rage, anxiety, nervousness, fatigue, depression, confusion, insomnia, suicidal thoughts, panic attacks, auditory hallucinations, chest pain, and shortness of breath. (AR at 32-35, 136, 147, 157). Plaintiff also complained of an inability to concentrate, difficulty driving at night, and side effects from medication, including unbearable headaches and dizziness. (AR at 44, 51, 147, 157).

    The determination of credibility and the resolution of conflicts in the testimony are functions of the ALJ. *Morgan v. Commissioner of Social Security*, 169 F.3d 595, 599 (9th Cir. 1999). In general, an ALJ's assessment of credibility should be given great weight. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). However, once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony regarding subjective pain and other symptoms merely because the symptoms, as opposed to the impairments, are unsupported by objective medical evidence. *Lingenfelter*, 504 F.3d at 1035-36; *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "'[T]he ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

\\

Here, the ALJ determined that Plaintiff's medically determinable impairments could have reasonably been expected to produce Plaintiff's reported symptoms, but that the intensity, persistence and limiting effects of those symptoms were not credible to the extent alleged. (AR at 15). The ALJ's decision was supported by substantial evidence.

In making the adverse credibility determination, the ALJ properly cited inconsistent statements in Plaintiff's testimony. (AR at 15); *see Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (explaining that the ALJ may employ ordinary techniques of credibility evaluation and may take into account prior inconsistent statements or a lack of candor by the witness). In particular, Plaintiff made contradictory statements about his use of marijuana. (AR at 15). At his hearing in August 2008, Plaintiff testified that he takes no more than "a few hits" of marijuana once or twice a month and that he does not even like to smoke marijuana. (AR at 39-41). He stated that his marijuana use had decreased significantly since September 2006, when he began receiving psychiatric treatment and medication. (AR at 40). In December 2008, however, Plaintiff admitted to a consultative psychologist that he was smoking marijuana on a daily basis "to calm down." (AR at 238, 407). Lab tests confirmed ongoing marijuana use. (AR at 379, 386, 408). Plaintiff's inconsistent statements regarding the frequency of his marijuana use provide a clear and convincing reason for discounting his testimony. *See Fair*, 885 F.2d at 604 n.5; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ also cited inconsistencies between Plaintiff's subjective complaints and his doctor's clinical observations. (AR at 15); *Regennitter v. Commissioner of SSA*, 166 F.3d 1294, 1297 (9th Cir. 1998) (explaining that a determination that a claimant's complaints are

"inconsistent with clinical observations" can satisfy the clear and convincing requirement). In his disability reports and at the hearing, Plaintiff claimed he suffers from insomnia, panic attacks, daily thoughts of suicide, auditory hallucinations, and terrible headaches and dizziness, as side effects from his medication. (AR at 32-34, 147, 157, 239). However, Plaintiff's treating psychiatrist, Larisa Levin, M.D., made contradictory findings. Over a three year period, Dr. Levin consistently reported that Plaintiff had no panic attacks, suicidal ideation, perceptual disturbances or thought process disturbances.[1] (AR at 289-90, 321-22, 369, 371-72, 376, 415-20, 422). Dr. Levin also noted that Plaintiff denied experiencing any side effects from his medication and he slept fairly well. (AR at 289-90, 321-22, 369, 371-72, 376, 415-20, 422). While subjective symptom testimony cannot be rejected solely on the ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining Plaintiff's credibility. *Rolling v. Massanari*, 261 F.3d 853, 957 (9th Cir. 2001) (citing 20 CFR § 404.1529(c)(2)). Here, it is clear that the ALJ's adverse credibility finding was supported by substantial evidence, given the inconsistencies between Plaintiff's complaints and his doctor's clinical findings, taken together with Plaintiff's inconsistent statements regarding his marijuana use.

**B.   Lay Witness Testimony**

Plaintiff's brother Carlos testified at the hearing, and Plaintiff's mother and two other brothers, Rene and Robert, submitted

---

[1]   The Court notes that Dr. Levin reported Plaintiff had complaints of "transient suicidal ideation" at his initial evaluation in September 2006. (AR at 288). Later, however, Dr. Levin expressly noted the absence of suicidal ideation. (AR at 321, 415).

written statements.[2] (Joint Stipulation at 11-12). Plaintiff contends the ALJ improperly rejected this lay witness testimony.

Lay witness testimony as to a claimant's symptoms or how an impairment affects the ability to work is competent evidence that the Commissioner must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); 20 C.F.R. §§ 404.1513(d), 404.1545(a)(3). An ALJ may disregard such evidence only if he gives reasons "that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ, however, need not discuss all evidence presented. *See Vincent on Behalf of Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, the ALJ need only explain why "significant probative evidence has been rejected." *Id.*

In the decision, the ALJ summarized the lay witness testimony of Plaintiff's brother Carlos. (AR at 16, 52-58). Carlos testified that Plaintiff suffered from flashes of anger and rage, poor social and coping skills, and insomnia. (AR at 16, 52-58). According to Carlos, Plaintiff had been experiencing many of these problems since he was a child. (AR at 55-56). The ALJ credited Carlos's testimony generally, but concluded that it did not establish disability. (AR at 16). The ALJ explained that despite Plaintiff's reported limitations, he had been able to maintain employment as a security guard and as a musician for significant periods of time. (AR at 16). Thus, to the extent the ALJ rejected Carlos's testimony, he stated a germane reason for doing so.

The ALJ did not discuss the statements written by Plaintiff's mother or two other brothers, Rene and Robert. (AR at 431-33, 435). Plaintiff's mother reported that as a child, Plaintiff was nervous,

---

[2]   The lay witnesses are referred to by their first names as they all share the same last name.

sullen, and angry. (AR at 435). In 1997, Plaintiff moved back to his mother's home for about a year. (AR at 435). Plaintiff seemed depressed and was very antisocial. (AR at 435). Plaintiff's mother reported that he would wake up at 4:00 in the morning and speak "in tongues." (AR at 435). She concluded that Plaintiff suffered from a mental illness and anxiety attacks. (AR at 435). Rene and Robert both discussed their childhood memories of Plaintiff's behavior, which included violent outbursts and dysfunctional people skills. (AR at 431-33). They also mentioned several recent family trips to Mexico with Plaintiff. Robert emphasized Plaintiff's need to isolate himself due to his inability to interact positively with others. (AR at 433). Rene noted that Plaintiff "hardly sleeps." (AR at 431). Rene also stated that he thought Plaintiff may be suffering from bipolar disorder. (AR at 432).

An ALJ's failure to address a lay witness's statement is harmless if "a reviewing court ... can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006); *see also Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 885 (9th Cir. 2006).

Here, the ALJ's failure to address the testimony of Plaintiff's mother, Rene, and Robert was harmless. *Stout*, 454 F.3d at 1056; *see also Robbins*, 466 F.3d at 885. First, the witnesses's descriptions of Plaintiff's mental condition during childhood and adult life prior to his alleged onset date are not probative of disability. Second, to the extent the witnesses addressed Plaintiff's current symptoms, their statements were merely corroborative of other evidence in the record, namely, Plaintiff suffers from violent outbursts, depression, social difficulties, and problems with sleep and social interactions. (AR at

8

431-33, 435). Finally, the medical diagnoses made by Plaintiff's mother and Rene, *e.g.*, Plaintiff suffers from a mental illness, anxiety attacks, and bipolar disorder, were beyond the competence of lay witnesses and do not constitute competent evidence. *See* 20 C.F.R. § 404.1513(a); *Nguyen*, 100 F.3d at 1467 (explaining that "medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence"). Under these circumstances, no reasonable ALJ considering this case would have reached a different conclusion had the statements from Plaintiff's mother, Rene, and Robert been addressed. Accordingly, reversal is not warranted on this claim.

### C. Plaintiff's Mental Impairment

Plaintiff contends that the ALJ erred in his evaluation of Plaintiff's mental impairment. In particular, Plaintiff faults the ALJ for improperly rejecting the opinions of his treating psychiatrist, Dr. Levin, treating psychologist, Tim Blanco, Ph.D., and a licensed clinical social worker, Rose Brancone, LCSW. (AR at 260-322, 328-38, 386-88).

The Commissioner is directed to weigh medical opinions based in part on their source, specifically, whether proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Generally, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. *See id.*; *Smolen*, 80 F.3d at 1285.

The Commissioner must also consider whether a medical opinion is supported by clinical findings and is contradicted by other medical evidence of record. The Commissioner may reject the uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.

1  *See Lester*, 81 F.3d at 831. A contradicted opinion of a treating or
2  examining professional may be rejected only for "specific and
3  legitimate" reasons supported by substantial evidence. *Lester*, 81 F.3d
4  at 830. If a treating professional's opinion is contradicted by an
5  examining professional's opinion, which is supported by different
6  independent clinical findings, the Commissioner may resolve the conflict
7  by relying on the latter. *See Andrews v. Shalala*, 53 F.3d 1035, 1041
8  (9th Cir. 1995); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir.
9  2007) (ALJ may reject opinion of treating physician in favor of
10  examining physician whose opinion rests of independent clinical
11  findings). An ALJ may reject the testimony of an "other source" simply
12  by providing reasons germane to that witness. *See Lewis v. Apfel*, 236
13  F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's
14  symptoms is competent evidence that an ALJ must take into account,
15  unless he or she expressly determines to disregard such testimony and
16  gives reasons germane to each witness for doing so.") (citation
17  omitted); *see also Dodrill*, 12 F.3d at 918-19.

18      <u>Dr. Levin</u>

19      Plaintiff began seeing Dr. Levin at the Los Angeles County
20  Department of Mental Health in September 2006. (AR at 288-89). Plaintiff
21  presented with anxiety, tension, crying spells, sleep problems,
22  transient suicidal ideation, reduced concentration, low energy and
23  frequent outbursts of anger. (AR at 288). He admitted marijuana use. (AR
24  at 288). Dr. Levin diagnosed Plaintiff with mood disorder, nos, cannabis
25  abuse, and polysubstance abuse in early remission. (AR at 288).

26      Dr. Levin continued to see Plaintiff on a regular basis through
27  November 2009. While Plaintiff's mood was sometimes described as
28  dysphoric, Dr. Levin's reports consistently showed that Plaintiff

10

appeared oriented, slept and ate fairly well, was not anhedonic, and denied suicidal and homicidal ideation, visual and auditory hallucinations, side effects from medication, and panic attacks. (AR at 289-90, 321-22, 369, 371-72, 376, 415-20, 422).

In November 2006, Dr. Levin completed a state unemployment disability form indicating that Plaintiff would not be able to return to his regular or customary work until April 27, 2007. (AR at 282). And, without explanation, Dr. Levin changed Plaintiff's diagnosis to bipolar affective disorder, nos, from mood disorder, nos, cannabis abuse, and polysubstance abuse in early remission. (AR at 282). Dr. Levin did note, however, that Plaintiff suffered from irritability, lack of concentration, mood changes, racing thoughts, decreased memory, and frequent outbursts of anger. (AR at 282).

In April 2007, Dr. Levin completed a supplemental certification form. (AR at 340). She opined that Plaintiff would not be able to return to his regular or customary work until September 27, 2007. (AR at 340).

The ALJ found that Dr. Levin's opinion that Plaintiff was disabled was inadequately supported by clinical findings. (AR at 15, 282, 289-90, 321-22, 340, 369, 371-72, 376, 415-20, 422); *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002) ("[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"); *see also Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, ... or by objective medical findings"); *Tonapetyan*, 242 F.3d at 1149 ("[w]hen confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory

and brief and unsupported by clinical findings"); 20 CFR § 404.1527(d) (treatment history, consistency with the record as a whole, and supportability of report affect weight accorded physician's report). Thus, the ALJ gave a specific and legitimate reason for rejecting Dr. Levin's opinion. (AR at 15-16).

The ALJ also relied on the opinion of the consultative examiner, clinical psychologist Ahmad Riahinejad, Ph.D. (AR at 12-13, 15-16, 237-41). In December 2006, Dr. Riahinejad conducted a psychological evaluation of Plaintiff at the request of the Commissioner. (AR at 237-41). Plaintiff complained that he has had suicidal thoughts since 1985, hears the voice of a woman screaming, and has seen shadows. (AR at 238-39). After administering a mental status examination, Dr. Riahinejad found Plaintiff to be generally pleasant and cooperative and oriented to time, place and person. (AR at 239). There was no evidence of psychomotor slowness. (AR at 239). Dr. Riahinejad noted Plaintiff's attitude was sufficient, affect was euthymic, and mood was depressed. (AR at 239). Plaintiff's intellectual functioning and general fund of knowledge were in the low average range, and his memory, concentration and judgment were fair. (AR at 239). Dr. Riahinejad diagnosed Plaintiff as suffering from polysubstance dependence, in partial remission, substance-induced mood disorder, antisocial personality disorder, and hepatitis C. (AR at 240-41). Dr. Riahinejad concluded that Plaintiff would have mild to moderate difficulty understanding, remembering and carrying out complex and detailed instructions, but was able to understand, remember and carry out simple, repetitive-type instructions without limitation and could relate with other people and accept supervision. (AR at 241). Dr. Riahinejad's evaluation was based on his own clinical findings made after he examined Plaintiff and reviewed the

12

results of clinical tests. Thus, to the extent the medical evidence from Plaintiff's treating source conflicted with, or undermined Dr. Riahinejad's opinion, the ALJ was free to resolve the conflict as he saw fit. *Andrews*, 53 F.3d at 1041 (ALJ has "sole[ ] province" to resolve conflicts between credible, yet conflicting, medical evidence); (AR at 35).

Dr. Blanco

Dr. Blanco conducted an initial assessment of Plaintiff in September 2006. (AR at 265-70). He reported that Plaintiff had a life-long history of poor coping skills and difficulties addressing stressful situations. (AR at 270). Plaintiff was recovering from his abuse of drugs, but was still using marijuana. (AR at 270). Dr. Blanco diagnosed Plaintiff with mood disorder, nos, and hepatitis C. (AR at 270). Dr. Blanco also assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 45, indicating "serious symptoms or serious impairment with social and occupational functioning." (AR at 270).

In August 2008, Plaintiff asked Dr. Blanco to complete a medical report in support of his claim for disability benefits. (AR at 405). Dr. Blanco administered a mental status exam at that time. (AR at 405). Dr. Blanco found that Plaintiff was oriented to person, place and time, his verbal responses were adequate, there was no evidence of psychomotor slowness, his thoughts were organized, and his concentration, attention span, focus, reasoning ability, and memory were good. (AR at 405). Dr. Blanco was concerned about Plaintiff's admitted marijuana use and requested that Plaintiff submit to drug testing. (AR at 405). As noted above, lab tests came back positive for marijuana. (AR at 379, 386, 408).

Plaintiff contends that the ALJ erred by failing to give proper

13

1    consideration to the GAF score assessed by Dr. Blanco in September 2006.

2    (AR at 270). However, the GAF scale was intended to be used to make

3    treatment decisions. *See* DSM-IV at 32. Neither the Social Security

4    regulations nor case law require an ALJ to determine the extent of an

5    individual's disability based solely on a GAF score. Thus, the ALJ did

6    not err in his consideration of Dr. Blanco's opinion. *See Vincent*, 739

7    F.2d at 1395 (the ALJ need only explain why "significant probative

8    evidence has been rejected"). Further, Dr. Riahinejad's opinion provided

9    substantial evidence in support of the ALJ's evaluation of Plaintiff's

10   mental impairment. *Andrews*, 53 F.3d at 1041.

11       Rose Brancone, LCSW

12       In October 2008, licensed clinical social worker Rose Brancone

13   completed an annual assessment and a client care coordination plan on

14   Plaintiff's behalf. (AR at 386-88). Ms. Brancone reported that Plaintiff

15   had an anger management problem, was very depressed and angry, had vague

16   ideas that came and went, and was suicidal at times. (AR at 386). Ms.

17   Brancone also noted that Plaintiff suffered from mood swings, anxiety,

18   sleep problems, agitation, and audio hallucinations. (AR at 388). Ms.

19   Brancone reported that Plaintiff could not work. (AR at 386).

20       A social worker without a doctorate does not meet the regulations'

21   requirements for an "acceptable medical source." 20 C.F.R. §

22   404.1513(a). An ALJ may properly discount a social worker's opinion

23   without satisfying the legal standards applicable to a treating

24   physician. *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996)

25   (opinions from "other sources" can be afforded "less weight than

26   opinions from acceptable medical sources.").

27       Although the ALJ did not state express reasons for discounting Ms.

28   Brancone's opinion of disability, any error was harmless. As discussed

14

above, the ALJ rejected the conclusion that Plaintiff's mental impairment rendered him unable to work because it was unsupported by the medical evidence. *See* 20 C.F.R. § 404.1513(a) ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)."); 20 C.F.R. § 404.1508 (mental impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings"); *Gomez*, 74 F.3d at 970-71. Further, Ms. Brancone's opinion conflicted with the findings of the consultative psychologist. An ALJ may reject testimony when it conflicts with the medical evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 1993) (stating that inconsistency with medical evidence was a germane reason for rejecting certain testimony).

Accordingly, the ALJ's evaluation of Plaintiff's mental impairment is supported by substantial evidence.

**IV.  Conclusion**

For the reasons stated above, the decision of the Commissioner is affirmed.


DATED:   December 6, 2010

_____
MARC L. GOLDMAN
United States Magistrate Judge

15